UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

TERRENCE GRAHAM,

        Plaintiff,        **MEMORANDUM & ORDER**

   -against-            **16-cv-4613 (NGG) (CLP)**

THE CITY OF NEW YORK, RICHARD
ALERTE, and JORGE TRICOCHE,

        Defendants.
-------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

   Plaintiff Terrence Graham brings this action under 42 U.S.C. § 1983 against Defendants

the City of New York ("the City") and two individual police officers, Richard Alerte and Jorge

Tricoche (the "Individual Defendants"). Plaintiff alleges that Officer Alerte deprived him of his

Fourth Amendment rights by engaging in an unlawful search and seizure ("Claim One"); that

both officers engaged in malicious prosecution of Plaintiff, resulting in his conviction and

incarceration ("Claim Two"); and that Officer Tricoche failed to intervene in the allegedly

unlawful search and seizure, violating Plaintiff's Fourth, Fifth, Sixth, and Fourteenth

Amendment rights ("Claim Three"). (Am. Compl. (Dkt. 17) ¶¶ 59-73.)[1] Plaintiff further

contends that the City is liable for depriving him of his Fourth Amendment rights ("Claim Four")

and that all Defendants conspired to violate his civil rights ("Claim Five"). (Id. ¶¶ 74-90.)

   Before the court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (Dkt. 23).) Defendants move to

---

[1] Plaintiff also refers to false arrest in the introductory paragraphs of his amended complaint, but does not assert
such a claim in his causes of action. (Compare Am. Compl. ¶ 2, with id. ¶¶ 59-90.) Nevertheless, the court
discusses below whether, assuming that Plaintiff asserts a cause of action for false arrest, such claim is timely.

dismiss the claims on the grounds that Claims One and Three, as well as whatever claims Plaintiff may have for false arrest, are time-barred; Claims Two, Four, and Five are without merit; and the Individual Defendants are entitled to qualified immunity. (Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 25).)

For the reasons that follow, Defendants' motion to dismiss is GRANTED in full.

## I. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

## II. BACKGROUND

The following facts are drawn from Plaintiff's amended complaint and are assumed to be true for the present motion.

Plaintiff, an African-American man, alleges that on May 21, 2011, the Individual

Defendants received a radio communication regarding a drug sale at an address in Brooklyn,

New York. (Am. Compl. ¶¶ 17-18.) The Individual Defendants then proceeded to the 19th floor

of the location, where they allegedly observed Plaintiff entering the floor from the stairwell. (Id.

¶¶ 19-20.) They then searched Plaintiff's "right jacket pocket without any prior visual

observations of a weapon and without first conducting a pat down of the outside of the pocket,"

and allegedly recovered a .22 caliber revolver from the pocket. (Id. ¶¶ 23-25.) The Individual

Defendants placed Plaintiff under arrest. (Id. ¶ 26-27.) Plaintiff alleges that the Individual

Defendants falsely reported to the Kings County District Attorney's Office ("KCDA") that they

observed Plaintiff exit an apartment, that when he saw them, he put his hand into his jacket

pocket, which they saw contained "a large, hard object inside, possibly the barrel of a firearm,"

and that they approached him and grabbed the firearm after he allegedly ignored repeated

instructions to remove his hands from his pocket. (Id. ¶¶ 29-31.)

Plaintiff was arraigned on May 22, 2011; bail was set, but Plaintiff was unable to post

bail. (Id. ¶¶ 33-35.) Plaintiff alleges that, before the grand jury, Officer Alerte again provided

false testimony. (Id. ¶¶ 36-37.) The Grand Jury voted to indict on May 26, 2011. (Id. ¶ 38.) On

April 18, 2012, a hearing was held on the legality of the search and seizure, at which Officer

Alerte allegedly once again provided false testimony. (Id. ¶¶ 40-42.) The trial court denied

Plaintiff's suppression motion on May 4, 2012. (Id. ¶ 43.) Plaintiff was subsequently convicted

of criminal possession of a weapon in the second degree and criminal possession of a controlled

substance in the fifth degree, and was sentenced to 18 years to life. (Id. ¶¶ 45-46.) Plaintiff

appealed from his conviction. (Id. ¶ 47.) On December 23, 2015, the Second Department of the

New York Supreme Court, Appellate Division, reversed the conviction, ruling that the gun and contraband were discovered pursuant to an illegal search. (Id. ¶¶ 48-49.)

Plaintiff commenced the present action on August 16, 2016 (Compl. (Dkt. 1)) and filed an amended complaint on January 27, 2017 (Am. Compl.). On March 1, 2017, Defendants moved to dismiss the amended complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Mem.)

## III.   DISCUSSION

### A.    Statute of Limitations as to Plaintiff's Unlawful Search and Seizure, False Arrest, and Failure to Intervene Claims

Where, as in New York, state law provides multiple statutes of limitations for personal injury actions, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989). In New York, the general statute of limitations governing personal injury actions is three years. N.Y. C.P.L.R. 214(5) (McKinney 2018); see Owens, 488 U.S. at 251; Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). While state law governs the length of the limitations period, federal law determines when a § 1983 claim accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, "it is the standard rule that [a claim accrues] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (alteration in original) (internal quotation marks and citations omitted). For a claim of false arrest, the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 397; accord Watson v. United States, 865 F.3d 123, 131 (2d Cir. 2017). The same is true for claims of failure to intervene and unlawful search and seizure. See Mercano v. City of New York, No. 15-CV-3544 (LGS), 2017 WL 1969676, at *3 (S.D.N.Y. May 12, 2017) (failure to

intervene); <u>Mallard v. Potenza</u>, No. 94-CV-223 (CBA), 2007 WL 4198246, at *5 (E.D.N.Y. Nov. 21, 2007) (search and seizure).

Because Plaintiff's cause of action accrued on May 21, 2011—the date of his arrest—the statute of limitations on these claims expired three years later, in 2014. Plaintiff only filed the instant action, however, on August 16, 2016. (<u>See</u> Compl.) His § 1983 search and seizure, false arrest, and failure to intervene claims are therefore untimely and must be dismissed.

**B.     Malicious Prosecution**

Plaintiff's malicious prosecution claim, however, is not time-barred. The statute of limitations on a malicious prosecution suit brought under § 1983 "begins to run when the prosecution 'terminates in the plaintiff's favor.'" <u>Spak v. Phillips</u>, 857 F.3d 458, 462 (2d Cir. 2017) (quoting <u>Poventud v. City of New York</u>, 750 F.3d 121, 130 (2d Cir. 2014) (en banc)). Plaintiff's prosecution was terminated on May 2, 2016, when the Court of Appeals dismissed the Government's leave to appeal, <u>People v. Graham</u>, 60 N.E.3d 1206 (N.Y. 2016), at which point there could be "no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense," <u>Smith-Hunter v. Harvey</u>, 734 N.E.2d 750, 753 (N.Y. 2000). Plaintiff's commencement of this action fell well within the three-year limitations period, <u>see</u> <u>Wallace</u>, 549 U.S. at 388, and the court turns to the merits of that claim.

The substance of a § 1983 claim based on malicious prosecution is analyzed under state law. <u>See</u> <u>Conway v. Village of Mount Kisco</u>, 750 F.2d 205, 214 (2d Cir. 1984). New York "law . . . places a heavy burden on malicious prosecution plaintiffs." <u>Smith-Hunter</u>, 734 N.E.2d at 752. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." <u>Manganiello v. City of New York</u>, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution

claim under New York law, a plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Id. at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). In their motion to dismiss, Defendants contend that Plaintiff has failed to plead any of the four elements of a malicious prosecution claim. (See Mot. at 6-11.) The court addresses each element in turn and concludes that Plaintiff's claim fails because it does not allege facts sufficient to establish that the state-court proceedings terminated in Plaintiff's favor.

### 1. Initiation of a Proceeding

"In general, 'once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.'" Levy v. City of New York, 935 F. Supp. 2d 575, 588 (E.D.N.Y. 2013) (alteration adopted) (quoting Douglas v. City of New York, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009)). If, however, the plaintiff can produce evidence that the prosecutor was "misled or pressured" by the defendant police officers, the officer may be said to have "initiated" the proceeding. Dufort v. City of New York, 874 F.3d 338, 352 (2d Cir. 2017).'

Plaintiff has sufficiently alleged that the Individual Defendants initiated the proceeding against him. Plaintiff alleges that the Individual Defendants knowingly made false allegations to the KCDA in an effort to "justify the arrest and to persuade the KCDA to commence the Plaintiff's criminal prosecution." (Am. Compl. ¶¶ 29-31.) He does not simply rely on conclusory allegations that the Individual Defendants lied. Rather, Plaintiff alleges that the Individual Defendants made specific statements that they could only have known to be false.

These allegations, if proven, could show that the officers misled or pressured the KCDA into prosecuting him, which would allow Plaintiff to satisfy the "initiation" prong.

### 2. Lack of Probable Cause

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." Colon v. City of New York, 455 N.E.2d 1248, 1250 (N.Y. 1983). The probable-cause analysis becomes much cleaner, however, once an accused criminal has been indicted: "[I]ndictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Savino, 331 F.3d at 72 (quoting Colon, 455 N.E.2d at 1250). This presumption, which courts refer to as the "presumption of probable cause," can be overcome by "[e]vidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney." Colon, 455 N.E.2d at 1250; see Manganiello, 612 F.3d at 162 (stating that the presumption of probable cause may be overcome if "there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment'" (quoting Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003))).

Plaintiff asserts that there was no probable cause for commencing the proceedings because Defendants neither observed a "bulge" in Plaintiff's jacket or waist nor observed Plaintiff's hand on top of or near a "bulge," and because there was no reason for Defendants to believe that Plaintiff was party to a sale of narcotics. (Am. Compl. ¶¶ 66-67.) The fact that Plaintiff was indicted by a grand jury would ordinarily defeat whatever arguments he might

make about whether the Individual Defendants unreasonably believed there to be probable cause, but in this case Plaintiff asserts that his indictment resulted from statements that the Individual Defendants "knew . . . to be false at the time that they were made." (See id. ¶ 30.) Defendants contend that Plaintiff has not shown lack of probable cause because he "has failed to put forth any evidence establishing [that the arresting officers may have lied in order to secure an indictment]." (Mem. at 10.) But at the motion-to-dismiss stage, this is the wrong standard to which to hold Plaintiff. To overcome the presumption of probable cause, Plaintiff must only "plainly allege[] that the indictment by the grand jury was grounded in the evidence fabricated by [the Individual Defendants]." Smalls v. City of New York, 181 F. Supp. 3d 178, 187 (E.D.N.Y. 2016). In Smalls, that burden was satisfied by the plaintiff's claims that (1) the defendants made false allegations, (2) the defendants knew the allegations to be false at the time they made them, and (3) the defendants forwarded the allegations to the Queens County District Attorney's Office in order to convince it to commence prosecution. Complaint ¶¶ 14-16, Smalls, 181 F. Supp. 3d 178 (No. 14-CV-2326). These allegations mirror those made by Plaintiff in the amended complaint. (See Am. Compl. ¶¶ 29-31.) If "bald assertions of fraud and perjury" were enough to overcome the presumption of probable cause on a motion to dismiss in Smalls, Plaintiff's nonconclusory allegations that the Individual Defendants lied suffice in this case.

Defendants also point to Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), which they claim stands for the proposition that "even if there was no reasonable suspicion to stop and search plaintiff, probable cause to arrest and to prosecute certainly arose once a gun was recovered from his person." (Mem. at 9.) For one, the plaintiff in Townes did not "plead conduct tantamount to malicious prosecution," so that case's statements about probable cause are not necessarily applicable to claims for malicious prosecution. See 176 F.3d at 147. Second, the

Second Circuit has, in the years since Townes, made it clear that a plaintiff may overcome the presumption of probable cause by alleging that the police "lied in order to secure an indictment." See Boyd, 336 F.3d at 77; see also, e.g., Vasquez v. Reilly, No. 15-CV-9528 (KMK), 2017 WL 946306, at *9 (S.D.N.Y. Mar. 9, 2017) ("[T]he principle established in Boyd, decided four years after Townes, controls the disposition of this Motion."). Townes is not on point and thus cannot overcome the lack of probable caused as set out in Plaintiff's pleadings.

        3.     Malice

A plaintiff in a § 1983 malicious prosecution action must also allege that the defendants "proceeded against [the plaintiff] with malice." See Manganiello, 612 F.3d at 163. "[T]he absence of probable cause does bear on the malice issue." Martin v. City of Albany, 364 N.E.2d 1304, 1307 (N.Y. 1977); see Hicks v. Marchman, — F. App'x —, 2018 WL 300434, at *2 (2d Cir. 2018) (summary order) ("[M]alice may be inferred from the actual lack of probable cause . . . ."); Boyd, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice"). Consequently, "malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Manganiello, 612 F.3d at 163-64 (internal quotation marks omitted).

Here, Plaintiff has sufficiently alleged actual malice for his malicious prosecution claim to survive a motion to dismiss. As stated above, the allegation that the Individual Defendants lied in order to secure his indictment is enough to overcome the presumption of probable cause. Defendants state that Plaintiff does not allege malice because he has not "proffer[ed] evidence suggesting, at least, that the defendants commenced [the] criminal proceeding 'due to a wrong or improper motive.'" (Mem. at 10 (quoting Pinter v. City of New York, 976 F. Supp. 2d 539, 559 (S.D.N.Y. 2013)).) But at the motion-to-dismiss stage, Plaintiff need not proffer evidence establishing actual malice. Cf. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir.

1997) ("[L]ack of probable cause generally raises an inference of malice sufficient to withstand

summary judgment."). Instead, because Plaintiff has overcome the presumption of probable

cause by alleging that the Individual Defendants lied in order to secure his indictment, Plaintiff

has also sufficiently alleged actual malice at this point in the proceedings.

4.    Termination Favorable to Plaintiff

*1.    Legal Standard*

"A § 1983 plaintiff claiming malicious prosecution must also establish that the

prosecution was terminated in his favor as determined by state law." Smalls, 181 F. Supp. 3d at

187-88 (citing Hygh v. Jacobs, 961 F.2d 359, 367 (2d Cir. 1992)). Under New York law, "a

criminal proceeding is terminated favorably to the accused when there can be no further

proceeding upon the complaint or indictment, and no further prosecution of the alleged offense."

Smith-Hunter, 734 N.E.2d at 753 (internal quotation marks omitted). While "it makes no

difference how the criminal prosecution is terminated, provided it is terminated, and at an end,"

the prosecution cannot have been terminated in a way "inconsistent with the innocence of the

accused." Id. (internal quotation marks omitted). "As a general matter, dismissals that have

been found to be inconsistent with innocence fall into three categories: (1) misconduct on the

part of the accused in preventing the trial from going forward, (2) charges dismissed or

withdrawn pursuant to a compromise with the accused, and (3) charges dismissed or withdrawn

out of mercy requested or accepted by the accused." Anilao v. Spota, 774 F. Supp. 2d 457, 508

(E.D.N.Y. 2011) (alterations adopted) (internal quotation marks omitted).

The termination of Plaintiff's prosecution—that is, the reversal on appeal of his

conviction on evidentiary grounds—does not fit into any of these categories. The Court of

Appeals has, however, alluded to a fourth type of case in which termination may be inconsistent

with innocence. In Martinez v. City of Schenectady, 761 N.E.2d 560, 564 (N.Y. 2001), the court

10

denied the malicious-prosecution claim of a plaintiff who had her criminal conviction dismissed when the appellate court granted her motion to suppress. Id. at 562. The Court of Appeals found that her subsequent action could not lie as her "felony conviction was reversed not because of her lack of culpability—indeed, her guilt was proven beyond a reasonable doubt—but because the evidence that formed the basis for her conviction was obtained pursuant to a faulty search warrant." Id. at 564.

### 2.    *Application*

Plaintiff's malicious-prosecution claim must fail because his state-court proceeding was terminated in a manner inconsistent with his innocence. As in Martinez, Plaintiff's state prosecution came to an end because his conviction was reversed on appeal. As in Martinez, the reversal of Plaintiff's conviction was due to a determination by the appellate court that the evidence leading to his conviction should have been suppressed. And as in Martinez, this reversal was based on "technical error at the trial level," something that cannot support a favorable termination.

That is not to say that a conviction reversed on suppression grounds can never support a subsequent claim for malicious prosecution. In Martinez, the court suggested that the termination of a prosecution on suppression grounds is inconsistent with innocence when the suppression error is merely "technical." See 761 N.E.2d at 564 (stating that the suppression was "based on technical error at the trial level" and then stating that such suppression was not favorable termination). The way Martinez applied the "inconsistent with innocence" standard indicated that the question of whether termination on constitutional grounds is "favorable" may mirror the question of whether a constitutional violation gives rise to a constitutional tort claim. See id. at 563-64. A § 1983 remedy is not proper where, as here, "the exclusion of

11

constitutionality challenged evidence and the reversal of the conviction was itself an adequate remedy." See Lyles v. State, 752 N.Y.S.2d 523, 526 (Ct. Cl. 2002) (citing Martinez, 761 N.E.2d at 560). This case is thus similar to Harris v. City of New York, No. 15-CV-6467 (MKB), 2017 WL 59081 (E.D.N.Y. Jan. 4, 2017), in that "the search[] that [was] later determined to be unlawful led to tangible evidence of [Plaintiff's] guilt" and nothing about the appellate reversal of Plaintiff's conviction calls that result into question. Id. at *4. As discussed above, Plaintiff has established lack of probable cause stemming from his well-pleaded allegations that the Individual Defendants lied subsequent to Plaintiff's arrest in order to convince the KCDA to prosecute him; Plaintiff has not, however, alleged that the unlawful search was anything more than inadvertent police mistake.[2] The trial court's decision not to suppress the evidence was therefore technical error of the sort that cannot support Plaintiff's post hoc claim for malicious prosecution.

This might be a different case if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun or drug contraband that the police recovered from him during the unlawful search. While it is not quite accurate for Defendants to state that Plaintiff "admitted that a gun was recovered from his person" (Def. Reply Mem. (Dkt. 28) at 5), Plaintiff also has not affirmatively stated to the contrary.[3] So while this case is not like Harris, in which the plaintiff had "concede[d] that the officers recovered a gun from his possession," 2017 WL 59081, at *6, neither is it like Smalls, in which no gun was recovered from the plaintiff's person and the plaintiff claimed "that he had no weapon [and] that he gave no one a weapon," 181 F.

---

[2] See also discussion infra Section III(D).

[3] The amended complaint is unclear as to whether Plaintiff admits that the Individual Defendants found a weapon on his person. (See Am. Compl. ¶ 25 ("[Officer Alerte] allegedly recovered a .22 caliber revolver from the defendant's right jacket pocket." (emphasis added)); see also id. ¶¶ 29-30 (stating that the allegations made by the Individual Defendants, one of which was that they grabbed a revolver from his pocket, were false).) Plaintiff does not, however, call into question the trial court's finding that the police also found drug contraband on his person.

Supp. 3d at 188. Being mindful not to read in facts beyond those which are clear in the record, and obeying the Appellate Division's command to look at "the circumstances of the case," Sinagra v. City of New York, 7 N.Y.S.3d 286, 288-89 (App. Div. 2015), the court finds that the reversal of Plaintiff's conviction on appeal did not call into question the possession of contraband of which he was convicted, which is inconsistent with his innocence.

It bears final reminder that the court today applies the "not inconsistent with innocence" standard as mandated by the New York Court of Appeals in Smith-Hunter. The proper standard for evaluating questions of favorable termination is thus not, as Defendants would have it, whether the initial proceeding was terminated in a way that "indicates the accused's innocence." (Mem. at 8.)[4] Instead, as established in Smith-Hunter, courts must ask whether a termination was "not inconsistent with innocence." 734 N.E.2d at 755; see id. at 756-58 (Rosenblatt, J., concurring) (emphasizing the court's rejection of the "indicative of innocence" standard in favor of the "not inconsistent with innocence" standard).[5] While it is true that, in Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013), the Second Circuit cited the "indicative of innocence" standard when denying a plaintiff's malicious-prosecution claim, that case's discussion of the favorable-termination standard is not binding here because the plaintiff would not have been able to claim favorable termination even under the correct "not inconsistent with innocence" standard: The Second Circuit's brief foray into the malicious-prosecution question concluded when the court decided that there was no doubt that the plaintiff had possessed the drugs he was convicted of possessing. Id. at 162. The fact that the court cited an outdated standard while reaching the

---

[4] Defendants' only citation in their favor on this point is O'Brien v. Alexander, 101 F.3d 1479 (2d Cir. 1996), a case that predates the New York Court of Appeals' adoption of the "not inconsistent with innocence" standard in 2000.

[5] Accord Harris, 2017 WL 59081, at *3 n.4 ("[T]he less stringent test is appropriate based on the Second Circuit instruction that state law governs section 1983 malicious prosecution claims and because the New York Court of Appeals specifically cautioned against setting a high bar for the favorable termination standard, instead, stressing that the termination need only be 'not inconsistent with innocence.'")

same conclusion it would have otherwise thus does not restrict federal courts considering

malicious-prosecution claims. See Harris, 2017 WL 59081, at *4 n.6.[6]

Taking into consideration the various legal and factual factors that courts in New York

have used to define the contours of what is "not inconsistent with innocence," this court finds

that Plaintiff cannot prove that his state criminal proceeding was terminated favorably.[7]

Accordingly, the court grants Defendants' motion to dismiss Plaintiff's Second Claim. Because

the court grants Defendants' motion to dismiss with respect to the claims against the Individual

Defendants, it does not need to consider whether the Individual Defendants are entitled to

qualified immunity. (See Mem. at 11.)

### C.    Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "[T]o hold a city [or municipal actor]

liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to

plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be

subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195

(2d Cir. 2007) (quotations and citation omitted) (alteration in original). A plaintiff bringing a

---

[6] Like Defendants, cf. supra note 3, the Gonzalez court relied solely on case law that predates the Court of Appeals' reconceptualization of malicious prosecution law in Smith-Hunter. See Gonzalez, 728 F.3d at 162 (citing Murphy, 118 F.3d 938; Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989)).

[7] The court notes that Plaintiff received a certificate from the New York Supreme Court classifying the dismissal of his case as "a termination of the criminal action in favor of the accused." Certificate of Disposition Dismissal No. 47997, People v. Graham, No. 04345-2011 (N.Y. Sup. Ct. Oct. 6, 2016); see also Bond v. City of New York, No. 14-CV-2431 (RRM), 2015 WL 5719706, at *2 (E.D.N.Y. Sept. 28, 2015) (considering documents from a malicious-prosecution plaintiff's state criminal proceedings). While at least two courts in this district have intimated that this certificate might, by itself, be enough to support a favorable termination claim, see Regeda v. City of New York, No. 09-CV-5427 (KAM), 2015 WL 5751117, at *2 (E.D.N.Y. Sept. 30, 2015); Boley v. Durets, 12-CV-4090 (ARR), 2013 WL 6562445, at *6 (E.D.N.Y. Dec. 10, 2013), no appellate court has gone so far and neither will this court, especially in light of the fact that this issue was not briefed by the parties. The court simply notes that this certificate should be considered a persuasive piece of evidence in favor of favorable termination, albeit one that can be overcome by a showing that the circumstances of the termination were not otherwise consistent with the plaintiff's innocence, as is the case here.

§ 1983 claim for municipal liability also must establish a causal connection between the municipality's official policy and the underlying constitutional violation. See Stern v. City of New York, No. 12-CV-5210 (NGG), 2015 WL 3827653, at *5 (E.D.N.Y. June 19, 2015).

In Claim Four, Plaintiff asserts that he was illegally searched and seized by Defendant Police Officers as the result of an "official policy or custom," namely the "illegal and improper Stop and Frisk program, or policy." (Am. Compl. ¶ 78, 80.) He also alleges that the City negligently hired and retained Officer Alerte and other officers whom Plaintiff claims the City knew had a propensity for engaging in such illegal behavior, thereby "plac[ing] the public or segments thereof at substantial risk of being the victims of unlawful and/or unreasonable behavior." (Id. ¶¶ 81-83.) In the Motion, Defendants claim that Plaintiff's allegations are conclusory and that he "provides no factual bases for [them], nor does he offer sufficient plausible facts to support his claim for their existence." (Mot. at 15.)

1.      Stop and Frisk

"[B]oilerplate assertions of municipal policy are insufficient to state a claim for Monell liability." Bishop v. City of New York, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016). "[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). Additionally, a plaintiff must "sufficiently connect[] this alleged policy to his alleged deprivation of constitutional rights." Betts v. Rodriquez, No. 15-CV-3836 (JPO), 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016).

Plaintiff has not met his burden in alleging a municipal custom or usage actionable under § 1983 causally connected to his alleged constitutional injuries. In the amended complaint, Plaintiff's only allegations relating to the existence of "an illegal and improper Stop and Frisk program" are two pages summarizing the opinion in Floyd v. City of New York, 959 F. Supp. 2d

15

540 (S.D.N.Y. 2013). (Am. Compl. ¶¶ 78-79.) He does not make any additional relevant allegations, nor does he point to parts of the Floyd decision that are particularly relevant to his case. Compare that with Bishop, in which the court allowed a "stop and frisk"-based Monell claim to proceed where the plaintiff "describe[d] a number of forms of evidence supporting his claim of municipal policy, including statistics and reports of whistleblowers." 2016 WL 4484245, at *4 (internal citations omitted). In addition, the Bishop court was satisfied that the plaintiff "connect[ed] those facts [recounted in Floyd] to the specific allegations that [the plaintiff] ma[de] as to the stop and frisk he experienced." Id. Plaintiff, by contrast, has satisfied none of those requirements. More than a citation to Floyd is needed in order to plead Monell liability. See Betts, 2016 WL 7192088, at *5.

Moreover, Plaintiff's Monell claim fails because he has not "alleg[ed] an actionable violation of his constitutional rights caused by that policy." Mangum v. City of New York, 15-CV-8810 (PAE), 2016 WL 4619104, at *7 (S.D.N.Y. Sept. 2, 2016). Because the court today dismisses Plaintiff's § 1983 claims based on Defendants' alleged violation of his Fourth Amendment rights, Plaintiff's claim for municipal liability predicated on the existence of the stop-and-frisk program cannot stand alone.

### 2. Negligent Hiring and Retention

Plaintiff also protests the City's hiring and retention of Officer Alerte, which Plaintiff claims gives rise to § 1983 liability because the City "knew or should have known . . . of [Officer Alerte's] propensity to engage in misconduct of the type alleged herein," resulting in the deprivation of Plaintiff's Fourth Amendment rights. (Am. Compl. ¶ 81.) In support of this claim, Plaintiff points to a number of police misconduct cases in which Officer Alerte has been a defendant. (Id. ¶ 82.) Plaintiff also makes the same claim, albeit with less specificity, with regard to a vague group of "detectives, sergeants, officers and employees." (Id. ¶ 83.) Plaintiff

16

does not state that the City has a widespread policy of failure to train or supervise Officer Alerte or other officers. Instead, Plaintiff alleges that the City is liable under Monell because of the City's deliberate indifference to Plaintiff's rights, as allegedly exhibited by its retention of Officer Alerte after he was named as a defendant in several misconduct lawsuits. (Opp'n to Mot. (Dkt. 27) at 19.)

Plaintiff purports to bring this claim under Monell (id. at 17-18), but Plaintiff's allegation that the City "knew or should have known" about these officers' alleged misconduct amounts to a claim of negligent hiring and retention. Accord Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (stating the elements of negligent supervision or retention under New York law, including that "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence" (quoting Kenneth R. v. Roman Catholic Diocese of Brooklyn, 654 N.Y.S.2d 791, 793 (App. Div. 1997))). A claim for negligent hiring and retention cannot establish a "custom or policy" under Monell because, to state a claim under § 1983, a Plaintiff must allege that municipal decision-makers "ordered or ratified" the unconstitutional behavior or that it was the result of the municipality's "deliberate indifference." See Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012). Any negligence on the part of the City in retaining Officer Alerte and other officers, despite past allegations of constitutional violations against them, thus cannot rise to the level of fault necessary to plead a claim for municipal liability. See Stallworth v. Town of Stratford, 09-CV-863 (AWT), 2011 WL 13234097, at *4 (D. Conn. Aug. 29, 2011).

Even if the court construes the amended complaint as alleging that the City deliberately retained Officer Alerte and other officers with full knowledge of their past violations as part of a "policy or custom" of allowing or encouraging such behavior, Plaintiff's claim would still fail as

17

a matter of law because his allegations are plainly insufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Plaintiff alleges that the City "was aware of numerous claims of constitutional violations involving Defendant [Officer Alerte]," but does not allege any specific facts beyond citations to other police misconduct cases in which Officer Alerte has been a defendant. (Am. Compl. ¶¶ 81-82.) The court agrees with Defendants that such evidence is not enough to survive a motion to dismiss. The fact that other individuals have alleged "that they experienced similar violations of their constitutional rights" does not mean that "those violations actually occurred." Simms v. City of New York, 480 F. App'x 627, 630 (2d Cir. 2012); see also Patterson v. Westchester County, No. 13-CV-0194 (PAC) (AJP), 2014 WL 1407709, at *11 (S.D.N.Y. Apr. 11, 2014) (collecting cases), report and rec. adopted, 2014 WL 2759072 (S.D.N.Y. June 16, 2014). Furthermore, such citations do not establish "the existence of an underlying policy that could be relevant here." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22-23 (2d Cir. 2012).

Accordingly, the court dismisses Plaintiff's claims for municipal liability.

## D.    Conspiracy

In Claim Five, Plaintiff alleges that the Individual Defendants[8] engaged in a conspiracy to deny Plaintiff his constitutional rights. (Am. Compl. ¶ 89.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d

---

[8] The amended complaint says that Claim Five is as to "All Defendants" (Am. Compl. at ECF p.18), but subsequently alleges that "Defendants, under the color of law, conspired with each other" (id. ¶ 89). In addition, Plaintiff's opposition brief construes his claim for conspiracy as being against "the two individually named police officers." (Opp'n to Mot. at 17.) In light of this discrepancy, the court interprets this claim as applying only to the Individual Defendants, not the City.

Cir. 1999). Conspiracy allegations that are "only conclusory, vague, or general" will not survive a motion to dismiss. Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002). "A plaintiff must allege facts that plausibly suggest a 'meeting of the minds' and provide some details of time and place." AK Tournament Play, Inc. v. Town of Wallkill, No. 09-CV-10579 (LAP), 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011).

Plaintiff's conspiracy claim is based on allegations that the Individual Defendants "conspired with each other to undertake a course of conduct to" deny Plaintiff "free exercise and enjoyment" of his constitutional rights. (Am. Compl. ¶ 89-90.) First, Plaintiff states that the Individual Defendants conspired "to injure, oppress, threaten, harass and intimidate Plaintiff." (Id. ¶ 89.) Plaintiff provides no additional allegations relating to this allegation. Second, Plaintiff states that the Individual Defendants "conspired to bear false witness and/or to bear false testimony and/or to produce false evidence." (Id. ¶ 90.) As to this allegation, Plaintiff states in his brief in opposition to the Motion that "the two individually named police officers agreed to make false statements to the [KCDA] that they observed a gun in the plaintiff's pocket in order to have the office commence a prosecution." (Opp'n to Mot. at 17.) In the amended complaint, however, Plaintiff merely states that the Individual Defendants made knowingly false statements, not that they engaged in a conspiracy to do so. (See Am. Compl. ¶¶ 29-32.) In short, this is no factual basis for a claim of conspiracy. It does not allege "the times, facts, and circumstances of the alleged conspiracy." Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007). Without facts pointing to a specific agreement that the Individual Defendants allegedly made in order to deprive Plaintiff of his constitutional rights, Plaintiff cannot make out a § 1983 conspiracy claim. See Iqbal, 556 U.S. at 678

19

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because Plaintiff fails to make out the first element of a § 1983 conspiracy claim, the court need not reach Defendants' argument that Plaintiff's claim is barred by the intracorporate conspiracy doctrine, or any other defenses raised by Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 23) is GRANTED. Claims One and Three are DISMISSED WITH PREJUDICE. Leave to amend is denied as futile, as these claims are time-barred. Claims Two, Four, and Five are DISMISSED WITHOUT PREJUDICE. The clerk of court is respectfully directed to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      February 28, 2018

NICHOLAS G. GARAUFIS
United States District Judge